23 C.C.P.A.(Patents)

## In re MILLER.

### Patent Appeal No. 3575.

Court of Customs and Patent Appeals.
Jan. 27, 1936.

Dyrenforth, Lee, Chritton & Wiles, of Chicago, Ill. (John H. Lee and B. A. Schroeder, both of Chicago, Ill., and Nelson J. Jewett, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

Claims 3, 6,. 11, 12, and 13 (being all the claims) in appellant's application for a patent directed to a deposit safe were rejected by the Primary Examiner of the United States Patent Office, which rejection, upon appeal to the Board of Appeals, was affirmed, and appellant has appealed to this court. The rejected claims follow:

"3. A deposit-safe comprising an anchor block; a heavy-walled container embedded in said block and having a change-cash compartment and a surplus-cash compartment therein, said surplus-cash compartment being accessible through said change-cash compartment and within hand-reach, *said container having a money-slot extending from the upper end of said change-cash compartment to the upper end* of said surplus-cash compartment; a closure member for the change-cash compartment; and a second closure member for said surplus-cash compartment."

"6. A deposit-safe comprising: an anchor block; a heavy-walled container embedded in said block and having a change-cash compartment therein and a surplus-cash compartment accessible through said change-cash compartment, said container being provided with an annular inwardly extending rib in said surplus-cash compartment for holding a money-bag, *the wall of said container being provided with a slot extending from said change-cash compartment to said surplus-cash compartment above said annular rib.*"

"11. A deposit-safe comprising, a heavy-walled container having a change-cash compartment and a surplus-cash compartment, said surplus-cash compartment being below said change-cash compartment, and separate closures for each of said compartments, *said container having a money-slot extending from an intermediate portion of said change-cash compartment and opening into said surplus-cash compartment.*

"12. A deposit-safe comprising, a container having a change-cash compartment and a surplus-cash compartment, the two compartments being vertically disposed with the change-cash compartment above the surplus-cash compartment, *a passage extending from the interior of the change-cash compartment and opening in the upper part of the surplus-cash compartment,* a money bag supported in the upper portion of the surplus-cash compartment and below said passage, and separate closures for each of said compartments.

"13. A deposit-safe comprising, an anchor block, a heavy-walled container imbedded in said block and providing an upper change-cash compartment and a lower surplus-cash compartment, a removable closure for said lower compartment and forming the bottom of said upper compartment, *a small curved passage extending through the wall of the container from the upper portion of the change-cash compartment and opening into the upper portion of the surplus-cash compartment.* (Italics ours.)"

The Examiner rejected claims 3, 11, and 13 upon the reference Belknap, 1,887,-866, of November 15, 1932, in view of Hermann, 1,854,839, of April 19, 1932, and rejected claims 6 and 12, which contain

an additional feature of a rib for holding a money bag, upon the ground that he was unable to find any patentable co-operation between this feature and other features of the deposit slot.

The board reversed the action of the Examiner in rejecting the claims for the reasons stated by him and held that the claims were patentable over the references relied upon by the Examiner, but unpatentable over the claims already granted in patent No. 1,965,296 to appellant on July 3, 1934, in view of the references relied upon by the Examiner. The board, however, did not rely upon the Belknap reference, and the brief for the Solicitor for the Patent Office contains the following: "A copy of a patent to Belknap appears in the record. It was cited by the examiner, but was not relied upon by the Board of Appeals and will not be further discussed here."

A description of the device and the board's reasons for the rejection of the claims are found in the following quoted portion of the board's opinion:

"The claims on appeal cover a safe designed to receive current receipts of cash and effectually protect the same against robbers. The safe also includes a compartment for the reception of change which is not so effectively guarded. The main receptacle has a door which is protected by two locks, the keys of which are not readily accessible. The change compartment which overlies the main compartment has a door which is protected by a single lock only; access to this compartment may be more readily had. In order that cash may be deposited in the lower or main compartment, a passageway around the door first referred to is provided in the wall of the safe. This passageway is of sufficient size to permit the insertion of current receipts in coin or bills. In order that the receipts may be readily removed when authorized, a bag is provided in the main compartment which is supported on a ledge at a level below that at which the passageway enters the compartment.

"This safe covers a species on which appellant has been granted generic protection in a patent No. 1,965,296, on an application No. 511,893. The claims of the patent above referred to were allowed by this Board in connection with a former appeal over the Belknap patent re-lied on by the examiner in rejecting the claims of the present application. The claims of the prior application having been held allowable over this patent, we think it follows that the present claims are also. It is our view, however, that the present claims do not patentably define over the claims of the patent already granted. The present species differs from the former only in that the passageway by which money is deposited in the main receptacle, instead of being formed in the main closure, is formed to by-pass the closure in a wall of the safe. It seems to us that this expedient is amply suggested by the patent to Hermann.

"Hermann might obviously have made provision for depositing in the receptacle of his safe by forming an opening through the door. Instead, he added metal to the side of the receptacle and formed a passageway in this metal.

"Following a similar procedure, we think the provision of the by-passing passageway in the already patented construction of appellant would not amount to invention. Obviously if the passageway is to be formed through the casing wall, it is essential that the receptacle be so supported that the passageway will discharge into it. We think it an obvious expedient to provide a supporting ledge on which the bag may be mounted.

"We regard the claims patentable over the references relied on by the examiner but unpatentable over the claims already granted in patent No. 1,965,296 in view of the references relied on by the examiner.

"The examiner's action is reversed but the claims are held unpatentable for the reasons above stated. * * *"

In this court, appellant stresses the importance of the feature of some of the claims which provide for a slot for the passage of money to the surplus-cash compartment through the walls of the container from the change-cash compartment. It is very earnestly contended that this is a distinct improvement over anything shown in the prior art or in appellant's patent and that by this passageway appellant has overcome the possibility of floating the money to the top of the surplus-cash chamber where it might be removed without unlocking the lower compartment of the safe. Appellant complains that notwithstanding the fact that the in-

stant application was copending with the application for the granted patent, the board has treated appellant's patent as though it were a part of the prior art. Appellant states that this kind of rejection is not sanctioned by the patent law, and that if it were the law he has "shown sufficient advantages for the improved specific structure over applicant's early specific structure to merit claims for this as a separate invention."

The Solicitor for the Patent Office urges that the board only looked to what was claimed in appellant's patent in order to determine what he was entitled to in the instant application without double patenting resulting.

We do not find it necessary to go into the question as to whether or not the Board of Appeals in effect considered appellant's patent a part of the prior art since we agree with the contention of the appellant, as to some of the claims involved, and think they are not anticipated by the prior art even if appellant's patent was included therein as such.

Appellant's patent shows a money slot through the closure separating the two chambers, through which money is to be transferred from the upper compartment to the lower compartment without unlocking the middle closure. Appellant emphasizes this feature in some of the granted claims. For instance, in claim 1 is the following: "1. * * * and a money-passage forming a communication between said cash-compartments so constructed as to permit transfer of cash from the upper compartment into the lower compartment and prevent retransfer therethrough to the upper compartment."

We think this and similar claims must be read in the light of appellant's disclosure in the application in which they appear. True enough, the slot feature of his present structure may be broadly described by the above-quoted language, but some of the claims at bar specifically require that the slot must extend around the closure between the compartments and through the wall of the container. This feature the board thought, and the Solicitor contends, was suggested by Hermann. We think not.

Hermann discloses a one-chambered built-in safe which is provided with a certain kind of locking device. Money may be placed into the safe through a slot which opens from the outside of the safe and extends into the chamber where the money is kept. It extends from the outside of the safe through the wall thereof into the chamber.

The question presented here is whether or not, in view of the fact that appellant had already provided in his other application, which ripened into a patent, for a slot extending from the upper chamber to the lower chamber, passing through the locking means which formed a partition between the two chambers, and was allowed said broad claims covering the same, and in further view of the fact that Hermann provided for the passage of money into the chamber of the safe from the outside through the wall of the safe, was it inventive for appellant to provide, in the combination described in certain of the claims, for a money slot extending through the safe wall from the upper chamber to the lower chamber?

It will be noticed that only claims 6 and 13 require that the passage should extend through the wall of the container. These claims in our judgment are drawn to inventive subject-matter and the said view taken by the board was erroneous. The appellant in the instant application is the first to ever suggest the construction of a safe where money was deposited in the surplus-cash compartment through a slot in the wall extending from the change-cash compartment, which last compartment could not be reached except by unlocking the same, and we do not think that Hermann, when taken in connection with appellant's prior disclosure would suggest this particular idea. We think its utility may be assumed. Its novelty is not questioned. There is certainly sufficient doubt, to the benefit of which appellant is entitled, to justify the allowance of claims 6 and 13. The decision of the board as to claims 6 and 13 is reversed. As to claims 3, 11, and 12, it is affirmed.